**UNITED STATES of America**

v.

**Scott David LATTANY.**

**Crim. No. 89–299.**

United States District Court, E.D. Pennsylvania.

Aug. 5, 1991.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

In the late spring of 1989, a three-block section of center city Philadelphia in the vicinity of Broad and Walnut Streets was the scene of four bank robberies. All four of the banks being federally insured, the Federal Bureau of Investigation was called into the case and subsequently distributed a picture of a man wanted for questioning in connection with robberies.

On June 16, 1989, a man walked into the First Bank of Philadelphia at 1424 Walnut Street. A teller who was closing his window looked at the man and thought he looked like the man in the picture which had been distributed by the F.B.I.. As the teller signaled to a fellow employee to be aware, the man pulled out a gun from a plastic bag and said, "This is a robbery. Give me all your money or I'll shoot you."

The second teller approached the robber from behind and ascertained that the gun was not real. He told the man to leave the bank. A scuffle ensued and the two tellers eventually forced the would-be robber to the floor and held him until the police arrived. The suspect was identified as Scott David Lattany. Employees of the other robbed banks later identified him as the man who had robbed them.

Lattany was indicted on four counts of robbery and one of attempted robbery. After a one week trial which concluded on February 1, 1991, Lattany was convicted on two of four robbery counts and on count five, the attempted robbery of the Bank of Philadelphia.

Before his case came to trial, Lattany was represented by five different attorneys. Lattany finally decided to represent himself at trial. I have before me Latta-ny's *pro se* motion for a judgment of acquittal or new trial. This motion is similar to Lattany's defense at trial in that it rambles across a wide variety of grounds Lattany feels justifies a new trial or an acquittal. Most of these grounds, such as his arguments concerning the admissibility of the evidence, its sufficiency to support a conviction, or his challenge to the racial composition of the jury panel are clearly insufficient to overturn the jury's verdict in this case, which was overwhelmingly supported by the evidence.

■ With this opinion I will address the only issue I believe warrants an opinion, which relates to the delay in bringing this case to trial.

This case was delayed coming to trial for some time because of the difficulty Lattany had with the attorneys who attempted to represent him. All told, counting the stand-by counsel who was present at trial and assisted Lattany at the trial, Lattany was represented by six attorneys from indictment to conviction. Lattany claims that the delay in trying his case was a violation of the Speedy Trial Act. As the following chronology of events shows, the delays which did occur were entirely attributable to Lattany's management of his defense.

July 27, 1989: Lattany was indicted.

August 17, 1989: Lattany pled not guilty.

August 22, 1989: The government moved for pre-trial detention.

August 23, 1989: The government's motion for pre-trial detention was granted.

September 7, 1989: The government filed a superseding indictment.

September 14, 1989: Lattany was arraigned. On that date, the first of Lattany's six attorneys was replaced by the Defenders Association because of a conflict of interest.

September 21, 1989: The court delayed the original trial date for this case from October 9, 1989 to October 23, 1989 to allow Lattany's new counsel time to prepare.

September 25, 1989: The defense moved for an extension of time to file pre-trial motions.

September 28, 1989: The defense's motion for an extension was granted, and a Speedy Trial Act Delay form was enclosed.

October 4, 1989: The defense filed a motion requesting funding for a psychiatric examination of Lattany.

October 5, 1989: The defense's motion was granted.

October 13, 1989: The defense filed a motion for a continuance of the trial date and to file additional motions.

October 20, 1989: The defense's motion was granted and trial was delayed from October 23, 1989 to December 11, 1989. A Speedy Trial Delay form was enclosed with the order.

November 8, 1989: A third attorney, Joyce Webb–Eubanks, took over Lattany's defense and asked for a further continuance.

November 30, 1989: The defense's motion for a continuance was granted until such time as the defense notified the court that it was ready for trial. Another Speedy Trial Delay order was filed.

The defense never notified this court that it was ready for trial.

May 2, 1990: The court set a trial date of June 6, 1990.

May 8, 1990: Webb–Eubanks asked to withdraw as Lattany's counsel, citing differences over case strategy.

May 21, 1990: Argument was held in open court concerning Lattany's intention to raise as a defense his addiction to gambling. At that hearing, Lattany stated that he wanted to represent himself, and after hearing him on that issue, I appointed Gregory Smith as standby counsel. Once again, the defense was directed to notify the court when it was ready to try the case and once again, no notification was ever received.

December 7, 1990: The government filed a motion asking for a trial date.

December 12, 1990: A trial date was set for January 22, 1991.

The government's response to Lattany's post-trial motion contains a more precise accounting of the time calculations. These calculations, taking into account excludible time, show that for the purposes of the Speedy Trial Act, Lattany was tried within 51 days, less than the Speedy Trial Act's mandate of 70.

■ Another of Lattany's grounds for a new trial is his assertion that a juror was "forced, pressured and coerced" into reaching a verdict. With this opinion I am attaching an affidavit by Gregory E. Smith, Lattany's standby counsel, which describes the incident to which Lattany is referring. However, it is well established that the sort of intra-jury pressure described by the juror in question does not warrant a new trial. *See Gov't of Virgin Islands v. Gereau*, 523 F.2d 140, 151 (3d Cir.1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976).

Therefore, I shall enter the following order:

## ORDER

And now, this 5th day of August, 1991, upon consideration of the defendant's Motion for Judgment of Acquittal or New Trial, and the Government's Response, it is ORDERED that said motion is DENIED.

## APPENDIX

In The United States Court

For The Eastern District of Pennsylvania

United States of America

v.

Scott David Lattany

Criminal No. 89–299

## STATEMENT OF CONTACT WITH A CERTAIN JUROR # 11

AND NOW, this 7th day of July, 1991 upon request of the Honorable Robert F. Kelly trial Judge in the above captioned matter. Stand by counsel, Gregory E.

Smith, Esquire, relates the following facts with regard to a certain Juror # 11 who sat on the Petite Jury in the trial of the above captioned matter.

1. On February 4, 1991 an individual who identified himself as Joseph T. Freeman called my office and indicated to my staff that he was a member of the jury which had convicted defendant, Scott Lattany on the previous Friday February 1, 1991.

2. Mr. Freeman went on the say that he felt he had made the wrong decision and he wanted to speak with me about it.

3. I was in the state of Virginia at my dying father's beside when this call was received.

4. I received the message on February 6, 1991.

5. I instructed my staff to contact the Court, and Assistant United States Attorney William B. Carr and inform them of the Juror's contact.

6. Following this action the Court called my office and indicated that it had no objection to my talking to this Juror.

7. On or about February 7, 1991. Arthur Dixon from my office received the following statement from Joseph T. Freeman upon returning his call.
"I really didn't agree with the decision on Friday. I was pressured by other jurors. I felt the man was innocent. A few jurors had the man convicted before the trial started. Two Jurors felt the picture had a different man. The other jurors pressured me to agree; this was my first time on a jury and I didn't want to be the only hold-out. After I got on the elevator I realized I could not let this go so I went back to the courtroom and everyone was gone."

8. I never had direct contact with this juror and this is all the information I have regarding his contacts to my office.

9. This information was given to Mr. Lattany on February 8, 1991, over the telephone when he called regarding an unrelated matter.

Respectfully submitted,
/s/ Gregory E. Smith
Gregory E. Smith