**UNITED STATES of America, Appellee,**

v.

**Scott David LATTANY, Appellant.**

No. 91–1826.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 17, 1992.

Decided Dec. 29, 1992.

Sur Petition for Rehearing Jan. 26, 1993.

---

* Senior Circuit Judge Garth voted only as to panel rehearing.

Timothy P. Booker, Philadelphia, PA, for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, William B. Carr, Jr., Asst. U.S. Atty., Philadelphia, PA, for appellee.

Before HUTCHINSON, COWEN and WEIS, Circuit Judges.

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellant, Scott David Lattany (Lattany), appeals a judgment in a criminal action in the United States District Court for the Eastern District of Pennsylvania convicting him of two counts of bank robbery and one count of attempted bank robbery in violation of 18 U.S.C.A. § 2113(a) (West Supp. 1992). Lattany asks us to reverse his conviction and dismiss the indictment with prejudice. His principal contention is that his rights under the Speedy Trial Act (the "Act"), 18 U.S.C.A. §§ 3161–3174 (West 1985 & Supp.1992), were violated because trial occurred 551 days after indictment.

Lattany was arraigned on August 17, 1989. His trial, originally scheduled for October 9, 1989, was continued several times at the request of a succession of defense lawyers and did not begin until January 29, 1991. Lattany was aware of the intervening pretrial motions filed on his behalf, including those seeking continuances, and made no objection to any of them. The pretrial motions included some in connection with a defense of insanity Lattany wanted to assert and the psychiatric exams related thereto, as well as the requests for continuances occasioned by changes in counsel, including an earlier continuance's final extension to give standby counsel time to familiarize himself with the case after Lattany's request to represent himself *pro se* was granted. This last extension and the earlier continuance then still outstanding were for an open-ended period. The district court did not contemporaneously record its findings in support of its conclusion that either this open-ended continuance, or its extension, was needed to serve the ends of justice. Unless that continuance and its extension properly and persistently tolled the seventy days within which the Act requires a criminal defendant to be tried, Lattany's convictions must be vacated.

This Court has already decided the Act does not require the facts which form the basis of an ends of justice continuance to be recorded within the seventy days during which the Act requires trial to commence, so long as the court states within that time the statutory basis for the continuance. Whether the Act authorizes an open-ended continuance is a question of first impression in this Court. After considering it, we hold that open-ended continuances to serve the ends of justice are not prohibited if they are reasonable in length. On the record before us, we also hold that the district court did not abuse its discretion in concluding that the open-ended continuance was necessary in the interest of justice and that both it and its extension were reasonable under the circumstances. Therefore, there was no Speedy Trial Act violation.

Lattany has filed a supplemental *pro se* brief in which he also listed several other issues as properly before this Court. In addition to the asserted violation of the Speedy Trial Act, Lattany's appellate counsel has also raised various other issues. These other issues all lack merit. There-

fore, we reject them without discussion and will affirm Lattany's convictions.[1]

I.

On July 27, 1989, Lattany was indicted and charged with attempted bank robbery in violation of 18 U.S.C.A. § 2113(a).[2] On August 17, 1989, he was arraigned and entered a plea of not guilty. His trial was scheduled for October 9, 1989. On September 7, 1989, a superseding indictment was returned additionally charging Lattany with a string of four robberies occurring within two blocks and six weeks of the earlier attempted robbery. On September 14, 1989, Lattany was arraigned on the superseding indictment and entered pleas of not guilty.

On May 21, 1990, Lattany sought and was granted permission to proceed *pro se* with the assistance of appointed stand-by counsel. Finally, on December 7, 1990, the government asked the district court to set a trial date. In response, the court set a trial date of January 28, 1991 and, in an order dated December 12, 1990, stated in full its reasons in justification of all the pretrial delays and continuances granted up to that time. On December 17, 1990, Lattany filed, for the first time, a *pro se* motion to dismiss the indictment for violation of the Speedy Trial Act.

Both parties filed numerous pretrial motions, including three requests for continuances that were filed with Lattany's knowledge.[3] During these pretrial proceedings, several attorneys attempted to represent Lattany. Ultimately, each of them was either unable to accept representation or had to withdraw because of conflict of interest, scheduling problems, or inability to agree with Lattany on defense strategy.

The district court denied Lattany's motion to dismiss and all other remaining pretrial motions after pretrial hearings that began on January 28, 1991. Trial began on January 29, 1991, 551 days after the return of the original indictment. At trial, Lattany represented himself, with the assistance of stand-by counsel.

The jury convicted Lattany on two counts of bank robbery and one count of

1. The other issues Lattany raises *pro se* are whether the district court abused its discretion in denying his request for a hearing on the issue of juror coercion prior to entering judgment on the jury's verdict; whether the jury panel was unconstitutionally selected and composed; whether the district court erred in denying his pretrial motion for authorization to hire psychologists and psychiatrists; whether the district court improperly deferred ruling on his motion *in limine* to exclude evidence of prior convictions; whether the district court erred in allowing armed marshals to escort Lattany to the jury panel room; whether the district court abused its discretion in denying his request to approach witnesses during cross-examination; whether there is sufficient evidence to support the jury's verdict; whether the government improperly commented on his failure to testify; whether the district court erred in permitting the jury during deliberations to view bank surveillance films and videotaped witness testimony which purportedly had not been shown at trial; and whether the district court abused its discretion in "rushing" or "repeatedly interrupting" Lattany during his closing statement. The other issues Lattany's counsel raises are: whether manifest injustice occurred when Lattany had to proceed to trial while suffering from a major mental illness; whether his due process rights were violated by the admission into evidence of an unduly suggestive photo spread sheet; and whether the district court abused its discretion in denying his request for a hearing on the issue of juror coercion prior to entering judgment on the jury's verdict.

2. Counsel for Lattany on this appeal filed a brief accompanied by an "Appellant's Appendix" ("App.") which was not paginated. Lattany filed a *pro se* brief which was accompanied by a "Supplemental *Pro Se* Appendix" ("Supp. *Pro Se* App.") containing neither a table of contents nor pagination. The government has provided additional copies of that "Supplemental *Pro Se* Appendix" containing an added table of contents and pagination. The government has also filed a "Government's Supplemental Appendix" ("Govt.Supp.App.").

3. Lattany relies upon *United States v. Didier*, 542 F.2d 1182 (2d Cir.1976), in arguing that he could not have agreed to these continuances since he was not provided with copies of the motions filed by his attorneys. The pretrial videotape record, however, shows that even though Lattany may not have actually received copies of such motions, he was informed of his case's status at each step in the process and was aware of the substance of the motions when they were filed. The videotape record is the only record made available to this Court with respect to the pretrial proceedings.

attempted bank robbery in violation of 18 U.S.C.A. § 2113(a) on February 1, 1991. On August 6, 1991, the district court denied Lattany's post-trial motions for judgment of acquittal or, in the alternative, a new trial, based upon various arguments, including violation of the Speedy Trial Act. In an accompanying opinion, 769 F.Supp. 181, the district court addressed Lattany's argument that the indictment should be dismissed under the Speedy Trial Act:

> This case was delayed coming to trial for some time because of the difficulty Lattany had with the attorneys who attempted to represent him. All told, counting the stand-by counsel [Smith] who was present at trial and assisted Lattany at the trial, Lattany was represented by six attorneys from indictment to conviction. Lattany claims that the delay in trying his case was a violation of the Speedy Trial Act. As the following chronology of events shows, the delays which did occur were entirely attributable to Lattany's management of his defense.

App. at vii–2, 3.[4]

On September 6, 1991, the district court sentenced Lattany to 210 months in prison and three years of supervised release. He filed a timely notice of appeal on September 13, 1991.

Both Lattany and counsel contend that the 551 days that elapsed between the return of the original indictment on July 27, 1989, and the empaneling of the jury on January 29, 1991 violated the Speedy Trial Act. The government contends that the substantial delay in this case was occasioned either by pretrial motions that tolled the time limit set by the Act or by continuances that were required to serve the ends of justice because defendant needed time to develop and prepare an adequate defense.

II.

The district court had subject matter jurisdiction under 18 U.S.C.A. § 3231 (West 1985). We have appellate jurisdiction under 28 U.S.C.A. § 1291 (West Supp. 1992). We set out the scope of appellate review over a district court's decision to grant a § 3161(h)(8) continuance in *United States v. Rivera Construction Company,* 863 F.2d 293 (3d Cir.1988):

> The standard of review of a continuance granted pursuant to § 3161(h)(8) of the Speedy Trial Act depends upon what step in the district court's analysis we are reviewing. Where we review the district court's interpretation of the statute, it is a question of law and, therefore, subject to plenary review. If the district court's factual conclusions are at issue, then a clearly erroneous standard is appropriate. Finally, when the district court grants a continuance after a proper application of the statute to established facts, then an abuse of discretion standard is applied.

*Id.* at 295 n. 3 (citations omitted). Therefore, we exercise plenary review over the district court's construction of the Act and its provisions on excludable time. If the district court properly construed and applied the Act to findings of fact that are not clearly erroneous, we must decide, under the circumstances of this case, whether it abused its discretion in permitting an open-ended continuance to run until December 12, 1990 without fixing a firm trial date.

III.

"Congress enacted the Speedy Trial Act to give effect to the Sixth Amendment right to a speedy trial by setting specified time limits after arraignment or indictment within which criminal trials must be commenced."[5] *Rivera,* 863 F.2d at 295 (quot-

4. The district court appeared to rely in part upon the fact that Lattany was responsible for his attorney turnover. The record indicates, however, that only one of Lattany's attorneys withdrew because of inability to work with him. The others withdrew or refused to accept representation because of scheduling problems or conflicts of interest. *See also infra* note 12 and accompanying text at p. 875.

5. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. The protections of the Act exceed those of the Sixth Amendment, which

ing H.R.Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 7401, 7402). The Speedy Trial Act requires:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense *shall commence within seventy days* from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs....

18 U.S.C.A. § 3161(c)(1) (emphasis added). That section also provides that certain "periods of delay shall be excluded ... in computing the time within which the trial ... must commence." *Id.* § 3161(h). The starting point for computing the seventy-day limit in this case is August 18, 1989, the day after Lattany's arraignment before a judicial officer. *See United States v. Anderson,* 902 F.2d 1105, 1108 n. 1 (2d Cir.) (day of indictment not included in calculating time within which defendant must be brought to trial), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 146 (1990); *United States v. Richmond,* 735 F.2d 208, 211 (6th Cir.1984) (because indictment was returned prior to defendant's first appearance before judicial officer at arraignment, includable time began to run from day of arraignment and, in calculating seventy-day limit, day of arraignment excluded); *see also Government of Virgin Islands v. Duberry,* 923 F.2d 317, 320 n. 8 (3d Cir. 1991) (excluding days on which triggering events occurred).

If the trial does not commence within seventy days, or within an extended time period allowed and allowable pursuant to § 3161(h), the indictment or information must be dismissed on motion of the defendant, with or without prejudice. 18 U.S.C.A. § 3162(a)(2). Subsection (h) provides nine exclusive circumstances warranting exclusion, including:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> . . . . .
>
> (F) delay resulting from any *pretrial motion,* from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> . . . . .
>
> (8)(A) Any period of delay resulting from a *continuance granted by any judge* on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance *on the basis of his findings that the ends of justice served* by taking such action outweigh the best interest of the public and the defendant in a speedy trial. *No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*

*Id.* §§ 3161(h)(1)(F), (h)(8)(A) (emphasis added).

Before excluding a period of time under an "ends of justice" continuance pursuant to (h)(8)(A), the district court must consider certain factors in determining whether such a continuance should be granted, including:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

does not require that a trial commence within a specified time. *United States v. Brooks,* 697 F.2d 517, 520 n. 3 (3d Cir.1982) (citing *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). Lattany does not directly assert any Sixth Amendment violation. In his supplemental *pro se* brief, he lists a Sixth Amendment violation as one of the issues before this Court; however, he does not address it in the body of his brief. Therefore, we will not consider the constitutional issue on this appeal.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

. . . . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

*Id.* § 3161(h)(8)(B)(i), (ii), (iv).

In this case, a number of pretrial motions were filed which could trigger subsection (h)(1)(F). In addition, the district court granted one six-week continuance and an open-ended "ends of justice" continuance at the request of defense counsel. The validity of these two continuances depends on subsection (h)(8)(A) as does the extension of the open-ended continuance granted at the request of Lattany's newly appointed standby counsel immediately after the district court ruled favorably on Lattany's request to proceed *pro se.*

Both the delays caused by the filing of pretrial motions and the delays caused by the open-ended continuance and its extension must be properly excludable if the requirements of the Speedy Trial Act are to be met.

A. *Pretrial Motions*

Section 3161(h)(1)(F) provides that delay resulting from any pretrial motion, from its filing through to its disposition, is excluded from the seventy-day limit. 18 U.S.C.A. § 3161(h)(1)(F).

] When Lattany was arraigned on August 17, 1989, the government filed a pretrial motion seeking detention; the district court granted detention on August 21, 1989. Therefore, the time from August 17 through August 21 was properly excluded under subsection (h)(1)(F).[6] The seventy-day speedy trial clock began to run on August 22, 1989. The trial was scheduled for October 9, 1989 and the district court appointed Ben W. Joseph, Esquire to represent Lattany. On September 7, 1989, a superseding indictment was returned charging Lattany with a string of four additional robberies occurring within two blocks and six weeks of the earlier attempted robbery. On September 14, 1989, Lattany was arraigned on the superseding indictment and entered pleas of not guilty. By this time, twenty-two days had run against the Speedy Trial Act's seventy-day limit since the days of indictment and arraignment are excluded under § 3161(h)(1).[7]

6. Motions regarding the defendant's pretrial detention and bond are "pretrial motions" for speedy trial purposes and thus excludable from the speedy trial calculation. *See United States v. Bellucci,* 737 F.Supp. 706, 708–09 (D.Mass.1990); *see also United States v. Savoca,* 739 F.2d 220, 223 (6th Cir.1984) ("time period from the filing of [a defendant's motion for reduction of bond with request for an oral hearing] through the conclusion of the ... hearing is clearly excludable under § 3161(h)(1)(F)"), *vacated on other grounds,* 761 F.2d 292, 294 (6th Cir.), *cert. denied,* 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985); *United States v. Severdija,* 723 F.2d 791, 793 (11th Cir.1984) (motion to reduce bond falls within § (h)(1)(F)). In calculating includable time, both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded. *United States v. Yunis,* 723 F.2d 795, 797 (11th Cir. 1984); *see* 18 U.S.C.A. § 3161(h)(1)(F).

7. When subsequent charges are filed in a supplemental indictment that charge the same offense as the original indictment or one required to be joined therewith, as in this case, the speedy trial period commences with the original filing. If the subsequent filing charges a new offense that did not have to be joined with the original charges, then the subsequent filing commences a new, independent speedy trial period. *See United States v. Ramos,* 588 F.Supp. 1223, 1226–27 (S.D.N.Y.1984) (citing *United States v. De Tienne,* 468 F.2d 151 (7th Cir.1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973); *United States v. Kripplebauer,* 463 F.Supp. 291 (E.D.Pa.1978); *United States v. Panetta,* 436 F.Supp. 114 (E.D.Pa. 1977)), *aff'd,* 779 F.2d 37 (2d Cir.1985).

During the arraignment on the superseding indictment, Mr. Joseph moved to withdraw as Lattany's counsel because of a conflict of interest. The district court granted the motion and appointed the Defender Association of Philadelphia (DAP) to represent Lattany. DAP assigned the case to Claire J. Rauscher, Esquire.

On September 21, 1989, the trial date was changed from October 9 to October 23 by the court clerk.[8] On September 25, 1989, Ms. Rauscher moved for an extension of time to file pretrial motions. On September 28, 1989, the motion for extension of time was granted, accompanied by a Speedy Trial Act delay form order. The order extended the time for pretrial motions until October 9, 1989 and also properly excluded September 25, 1989 through September 28, 1989 from the seventy-day time period pursuant to subsection (h)(1)(F). Therefore, thirty-two days of non-excludable time had elapsed as of September 28, 1989.

On October 4, 1989, Ms. Rauscher moved for court authorization to hire a psychiatrist or psychologist to examine Lattany. This motion was granted the next day on October 5. Also pursuant to subsection (h)(1)(F), October 4 and 5 were excluded from the time computation; therefore, thirty-seven days of nonexcludable time had elapsed as of October 5, 1989.

On October 13, 1989, Ms. Rauscher moved for a six-week continuance of the trial date, which had been scheduled for October 23, 1989; she also requested permission to file motions out of time. Ms. Rauscher stated in her motion that she sought the continuance because of delays in receiving requested discovery from the government and because she had not had adequate time to prepare for trial. While this pretrial motion was pending, subsection (h)(1)(F) stopped the speedy trial clock at forty-four days. On October 20, 1989, the district court ruled on Ms. Rauscher's motion and granted a six week continuance, setting a trial date of December 11, 1989. This order, dated October 23, 1989, appears on a preprinted Speedy Trial Act delay form order and states that the six-week continuance was necessary in order to prevent a miscarriage of justice and to serve the ends of justice, citing in support Speedy Trial Act § 3161(h)(8)(B)(i).[9] In addition, the order notes that the defendant had requested the continuance. We hold that the six weeks' continuance was granted in full compliance with the procedural requirements of the Speedy Trial Act and that the reasons the district court gave to justify it are valid and proper. Therefore, the time period between October 20, 1989 and December 11, 1989 is properly excluded. During this time, the clock stood still at forty-four days.

On November 8, 1989, Ms. Rauscher withdrew and transferred the case to Joyce Webb–Eubanks, Esquire. A psychologist examined Lattany on December 5, 1989 and Ms. Webb–Eubanks filed a notice of insanity defense on December 15, 1989. Lattany's expert's report was provided to the government on January 3, 1990. In the meantime, on November 30, 1989, the district court had granted its open-ended continuance, stating on a Speedy Trial Act form that it was needed to serve the ends of justice.

On April 18, 1990, while the November 30, 1989 open-ended continuance was still extant, the government filed a motion *in limine* to exclude evidence of Lattany's claimed compulsive gambling disorder as the basis for his defense of insanity or mental defect. On September 5, 1990, Lattany filed a second motion for authorization to hire a psychologist or psychiatrist. On October 24, 1990, the district court entered an order stating:

> And now, this 24th day of October, 1990, upon consideration of Defendant's Mo-

8. No judge of the district court was involved in this continuance. It was merely a docketing change by the court clerk; therefore, it did not stop the running of the seventy-day period.

9. Subsection (h)(8)(B)(i) provides that the court should consider whether the failure to grant a continuance would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice. 18 U.S.C.A. § 3161(h)(8)(B)(i).

tion for Authorization to Hire Psychiatrists and Psychologists, *and the Government's Motion in Limine on this issue,* it is ORDERED that said motion is DENIED.

Appellant's Supplemental *Pro Se* Appendix (Supp. *Pro Se* App.) at 122a (emphasis added).[10]

Subsection (h)(1)(F) does not impose a reasonableness limitation on delay due to pretrial motions. *See Henderson v. United States,* 476 U.S. 321, 326, 106 S.Ct. 1871, 1874, 90 L.Ed.2d 299 (1986) ("The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not."); *see, e.g., United States v. Gonzales,* 897 F.2d 1312, 1315–16 (5th Cir. 1990) (absent showing that defendant attempted unsuccessfully to obtain hearings on pretrial motions or that hearings were deliberately refused with intent to evade Speedy Trial Act, delay of over 427 days resulting from pretrial motions was fully excludable from seventy-day period under Act), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991). The district court properly excluded the time related to the filing of the above pretrial motions.

The exclusion of the delays incident to these pretrial motions, however, cannot save Lattany's convictions unless the court's November 30, 1989 open-ended "ends of justice" continuance and its later extension on May 21, 1990 also stop the ticking of the Speedy Trial Act's clock. Therefore, we turn to the circumstances attendant to these rulings.

### B. *The Open-Ended Continuance*

The validity and propriety of the open-ended continuance granted November 30, 1989 and its May 21, 1990 extension present troublesome questions. Since resolution of Lattany's Speedy Trial Act issue depends on their resolution, they become the main focus of our analysis.

#### 1.

On November 1, 1989, Ms. Rauscher wrote to Lattany and advised him, because of her heavy trial schedule, she was transferring the case to another public defender, Attorney Joyce Webb–Eubanks. On November 8, 1989, Ms. Webb–Eubanks sent a letter to the court advising it of this change of counsel and requested a postponement of the December 11, 1989 trial date. She stated she was having problems with her own schedule and needed more time to prepare for trial because of the number of bank robberies, witnesses, and legal issues involved, and the possibility of an insanity defense. The district court docketed this letter on November 28, 1989, treated it as a motion and granted it on November 30, 1989. The order, appearing on a preprinted Speedy Trial Act delay form order pursuant to 18 U.S.C.A. § 3161(h)(8), stated that a continuance was necessary to prevent a miscarriage of justice and to serve the ends of justice. It also stated that this continuance was granted at the request of Lattany's counsel and went on to state: "Counsel shall inform the Court when this case is

10. This order is ambiguous. It does not clearly dispose of the government's April 18, 1990 motion *in limine.* The record does not otherwise show that the district court ever disposed of this motion prior to January 28, 1991, the day before trial began. The government interprets this order as denying only Lattany's motion to hire psychiatrists and psychologists and asserts that the government's April 18, 1990 motion to exclude evidence of compulsive gambling remained outstanding until January 28, 1991. The pretrial proceedings on January 28, 1991 do not, however, mention the government's April 18, 1990 motion as still outstanding. Therefore, the October 24, 1990 order could be construed to dispose of both Lattany's motion regarding psychiatric evaluation and the government's April 18 motion. This construction is buttressed by the language the district court used in its December 12, 1990 order justifying the open-ended continuances that had been granted in this case. The December 12, 1990 order stated: "[T]he Court on October 24, 1990, precluded as a matter of law the defendant's preferred defense (a purported gambling disorder)[.]" Supp. *Pro Se* App. at 124a–125a. The time period during which the April 18, 1990 motion was outstanding falls within the time period covered by the open-ended continuance and its subsequent extension. Unless the district court erred in granting the open-ended continuance and excluding the delay resulting from it, it is of no consequence when the district court ultimately disposed of the April 18 motion *in limine* if the November 30, 1989 open-ended continuance is proper.

ready for trial[,]" thus granting defense counsel an "open-ended" continuance. Government Supplemental Appendix at 14a. Ms. Webb-Eubanks never informed the court that she was ready for trial.

The events leading up to the extension of the open-ended continuance are similar. On May 2, 1990 the clerk of the district court *sua sponte* set a June 4, 1990 trial date. On May 8, 1990, Ms. Webb-Eubanks filed a motion to withdraw as Lattany's counsel based upon irreconcilable differences concerning defense strategy.[11] The district court held a hearing on that motion on May 21, 1990. At the hearing, Ms. Webb-Eubanks explained that an irreconcilable difference existed regarding Lattany's defense strategy. Lattany told the court that he had already had five lawyers representing him and asked the court to appoint still another. The court granted Ms. Webb-Eubank's motion and adjourned the hearing until the arrival of Gregory Smith, Esquire, an attorney the court had contacted to represent Lattany. Mr. Smith met with Lattany for approximately one and a half hours and, when the hearing resumed, Smith advised the court that Lattany wished to represent himself. Smith stated that he would be Lattany's sixth attorney, that Lattany's unique defense "has spawned the conflict of problems with the other attorneys," and that Lattany was capable of representing himself. Govt. Supp.App. at 14a.

Although Attorney Smith's representations may not have been wholly accurate, the record indicates Lattany's dissatisfaction with counsel did contribute to the changes in counsel. Only one of Lattany's attorneys withdrew from representation because of inability to work with Lattany.[12] Of Lattany's "six" attorneys, two were appointed by the court but did not accept the appointments for reasons that are undiscernible from the record. Lattany's "third" attorney, the first one to enter an appearance on his behalf, withdrew based on a conflict of interest. Lattany's "fourth" attorney, Ms. Rauscher, was replaced by another DAP attorney because of her heavy workload. Lattany's "fifth" attorney, Ms. Webb-Eubanks, withdrew because of irreconcilable differences with Lattany regarding the conduct of his defense. Lattany's "sixth" attorney, Mr. Smith, was then appointed, but ultimately acted only as standby counsel while Lattany represented himself during the trial.[13]

Nevertheless, the district court's opinion dated August 5, 1991 dismissing Lattany's post-trial motions indicates that it considered Lattany personally responsible for the turnover of attorneys. *See supra* note 4. Apparently, the district court relied on Mr. Smith's statements to the court during the May 21, 1990 hearing explaining why Lattany changed counsel five times. Mr. Smith made those statements after speaking with Lattany immediately prior to his appointment as standby counsel and we think the court was justified in relying on them.

At this May 21, 1990 hearing, the following colloquy ensued:

> THE COURT: All right, based upon your answers I think that you have knowingly and voluntarily waived your right to counsel. I will permit you to represent yourself. Mr. Smith, do you have any objection to being appointed as stand-by counsel?
>
> MR. SMITH: None, your Honor, we were communicating well with one another, I think I can work with him.
>
> THE COURT: Okay, I'll appoint you stand-by counsel.
>
> MR. SMITH: Thank you very much.
>
> THE COURT: *And would you contact the U.S. Attorney as soon as you can, and my office to let us know when you'd be ready to go to trial—not you, your client will be ready to go to trial, all right?*

11. The motion sought withdrawal not only on behalf of Ms. Webb-Eubanks but also asked for leave to withdraw as counsel on behalf of the entire DAP office.

12. *See supra* note 4.

13. There is likewise nothing in this record to indicate that Mr. Smith in any way improperly misled the court, either intentionally or inadvertently.

MR. SMITH: I think that will be—I will.

THE COURT: He's been waiting a long time now, and I'd like to get this case tried.

MR. SMITH: Very well.

Govt.Supp.App. at 11a. The district court then granted Lattany's request to proceed *pro se,* appointed standby counsel, and extended the November 30, 1989 open-ended continuance. The court made no further Speedy Trial Act statement and provided no additional justification beyond that given at the time of the November 30, 1989 open-ended continuance the court had originally granted at Ms. Webb-Eubanks' request. Like Ms. Webb-Eubanks, Mr. Smith never notified the court that Lattany was ready to proceed with the case.[14]

On December 12, 1990, in response to a government motion to set a trial date, the district court set trial for January 28, 1991.[15] The district court's December 12, 1990 order stated in relevant part:

> 3. There have been numerous continuances of the trial date in this case since the return of the superseding indictment on September 7, 1989, occasioned by: (1) the substitution of new counsel for the defendant, (2) requests for continuances by defense counsel, and (3) a lack of certification to the Court by the defendant or any of his counsel that he is ready for trial.
>
> 4. The Court finds, as a supplement to earlier findings and orders with respect to excludable time pursuant to the Speedy Trial Act, that:
>
> (a) the period of delay until the scheduled trial date shall be excluded in computing the time within which the trial of these offenses must commence, 18 U.S.C. § 3161(h);
>
> (b) the ends of justice served by this continuance outweigh the best interests of the public and the defendant in a speedy trial, § 3161(h)(8)(A);
>
> (c) particularly in light of the facts that (i) the defendant intends to represent himself, (ii) is incarcerated, and (iii) the Court on October 24, 1990, precluded as a matter of law the defendant's preferred defense (a purported gambling disorder), continuance of this case to the date specified above is necessary to permit effective preparation for trial and preclude a miscarriage of justice, § 3161(h)(8)(B)(i) & (iv).

Supp. *Pro Se* App. at 124a–125a. The order supplemented the district court's earlier findings and orders by specifically excluding all time elapsed before January 28, 1991 as necessary to permit effective preparation for trial and to preclude a miscarriage of justice, pursuant to 18 U.S.C.A. § 3161(h)(8)(A), (B)(i) and (B)(iv) and stated specific reasons that it felt required the earlier open-ended continuances. Thus, the text of the December 12, 1990 order sets forth specific findings which demonstrate that the continuance of Lattany's trial had been caused by the substitution of new defense counsel, defense counsel requests for continuances in order to adequately prepare, as well as the failure of the defendant or any of his counsel to certify their readiness for trial.

2.

█ Subsection (h)(8)(A) states that any period of delay is excluded if the judge grants a continuance because the ends of

14. Our review of the record convinces us that Lattany desired all the continuances that were granted. That circumstance informs our decision. We caution district courts, however, against the practice of entering open-ended continuances, no matter who asks for them, and recommend strongly that the reasons for granting any continuance, including ends-of-justice continuances, be recorded at the time the continuance is granted. A district court's reliance on the parties to advise it when they are ready for trial, as the district court did here, can interfere with the Speedy Trial Act's purpose of insuring prompt trial of criminal cases for the protection of the public as well as the defendant. Recording the reason for a continuance long after it is granted often gives the appearance of *post hoc* rationalization induced by a wish to preserve a deserved conviction that otherwise falls afoul of the Act's bright-line rule.

15. The government's motion stated that "[t]he government has continued to inquire of Mr. Smith when Mr. Lattany can be ready for trial" and that Mr. Smith had agreed Lattany could be ready in late January of 1991. Supp. *Pro Se* App. at 129a.

justice serve to outweigh the speedy trial interests of the public and the defendant. 18 U.S.C.A. § 3161(h)(8)(A). The statute also provides that the court must justify its continuances by an oral or written statement setting forth on the record its reasons for granting them. *Id.* If such a statement is not provided, the delay occasioned by a continuance cannot be excluded from the time within which a criminal defendant must be brought to trial. *Rivera,* 863 F.2d at 296; *Brooks,* 697 F.2d at 520. Moreover, a district court cannot provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance *nunc pro tunc. See United States v. Carrasquillo,* 667 F.2d 382, 386 (3d Cir.1981). We have also held, however, that it can delay articulating on the record its reasons for granting the continuance if the order granting the continuance is entered before the Act's seventy-day limit would have otherwise expired. *See Rivera,* 863 F.2d at 297; *Brooks,* 697 F.2d at 521–22.

Placing the reasons for an "ends of justice" continuance on the record serves two purposes:

> First, Congress wanted to ensure that a district judge would give careful consideration when balancing the need for delay against "the interest of the defendant and of society in achieving speedy trial." Second, the requirement provides a record so that an appellate court may review the decision.

*Rivera,* 863 F.2d at 296 (quoting *Brooks,* 697 F.2d at 520 (citations omitted)). Thus, controlling precedent "requires the district court to decide to grant a continuance before the period begins to run, [but] it does not require the court to put its reasons on the record at that time. A subsequent articulation satisfies the purpose of the statute." *Rivera,* 863 F.2d at 297.

In *Rivera,* the district court, after disqualifying counsel, granted a continuance that delayed trial for three months. *Id.* at 294. The *Rivera* court did not use a Speedy Trial Act delay form order and did not make any reference to the Act at the time it granted the continuance. Five days before the scheduled trial date, the defendants filed a motion to dismiss the indictment for violation of the Speedy Trial Act. *Id.* The district court denied the motion to dismiss and only then stated that the time was excluded under § 3161(h)(8)(B)(iv). *Id.* at 294–95. On appeal, the defendants contended that the Act did not permit a district court to place on the record its reasons for ordering the continuance after the Speedy Trial Act's clock would have otherwise run and a motion to dismiss for excess delay was filed. *Id.* at 295. In *Rivera,* the district court did state on the record when it granted the continuance that it was doing so in order to allow new counsel sufficient time to prepare the defense. *Id.* at 296. This Court held: "Viewed in the totality of circumstances," the district court had made findings that were supported by the evidence and met the Act's requirement that they be stated on the record. *Id.* In *Rivera,* we indicated that we would strongly disfavor any apparent after-the-fact justification, *id.* at 297, but in *Carrasquillo,* squarely so held. *See Carrasquillo,* 667 F.2d at 385.

In *Carrasquillo,* the district court granted a retroactive ends of justice continuance. *Id.* at 385. We held that a judge could not grant such a continuance after the expiration of the seventy-day period was brought to its attention by a motion to dismiss. *Id.* at 383, 386. There, the deputy clerk, rather than the district court judge, had fixed the trial date. *Id.* at 383, 385. The government argued that because the defendant's attorney had contacted a deputy clerk, the deputy clerk's discussion with defense counsel regarding the trial date could be viewed as the granting of a continuance under the Act. We rejected this argument and held that a district judge must consider and grant a continuance before the time may be excluded under § 3161(h)(8)(A). *Id.* at 385–86.

In *Carrasquillo,* there was no decision or reflection whatsoever on the part of the district judge concerning the continuance until after expiration of the seventy-day period. *Id.* at 385. The reasons the court gave for the continuance were wholly an afterthought. Here, in contrast, the court

stated on November 30, 1989 that an ends of justice continuance was required. After reconsidering the situation on May 21, 1990, the district court extended that continuance, fully articulating the basis of both the original order and its extension in the December 12, 1990 order that set a January 28, 1991 trial date.

In this respect, Lattany's case is analogous to *Brooks,* not *Carrasquillo.* In *Brooks,* the district court excluded the time that passed after it had signed a preprinted Speedy Trial Act delay form order granting a continuance pursuant to § 3161(h)(8)(A) on which it had checked off certain reasons for granting the continuance that were preprinted on the form. *Brooks,* 697 F.2d at 521. The district court explained its reasons for granting the continuance in more detail later, after the seventy-day period would have otherwise run. *Id.* at 519, 521. We held that the Speedy Trial Act was not violated because the district court had granted the continuance before the excluded period. *Id.* at 522. In *Brooks,* we distinguished *Carrasquillo* as follows:

> The [*Carrasquillo* district] court ... granted a retroactive "ends of justice" continuance for the period during which the defense attorney's other appearances made him unavailable for the trial of Carrasquillo. This Court held that a judge could not grant an "ends of justice" continuance *nunc pro tunc,* providing after the fact justification for unauthorized delays. Rather, we declared, the district judge must consider the matter at the outset and determine whether the "ends of justice" require that the trial be postponed.
>
> Although the district court must decide initially whether to grant a continuance, we did not, in *Carrasquillo,* require that the reasons for the decision be entered on the record at the same time that the decision is made.

*Id.* at 521–22. Similarly, in *Rivera,* we relied upon *Brooks* and stated that while *Carrasquillo* requires the district court to decide to grant a continuance before the seventy-day period expires, it does not require the court to place its reasons for granting such a continuance on the record at that time. *Rivera,* 863 F.2d at 297.

*Rivera* and *Brooks* permit the district court to grant a continuance and subsequently articulate the full reasons that it feels support the continuance. This is what the district court did here when it noted the statutory basis for the November 30, 1989 open-ended continuance and contemporaneously stated that the delay was necessary to give new counsel time to prepare. That reason and the November 30, 1989 continuance remained operative until December 12, 1990, when the court fully articulated its reasons for granting it.

The continuance in *Rivera* was, however, for a specified three month period of time, not open-ended like the continuance at issue here. *Rivera* is otherwise similar to this case, and therefore we believe that it otherwise meets the requirements of *Rivera.* It was granted before the Speedy Trial Act's seventy days would have otherwise run. Although the district court entered the continuance before fully setting forth the findings on which it was based, the court did refer to the Act's ends-of-justice requirement at the time it entered the continuance. The court contemporaneously and specifically justified the continuance by a finding that it was necessary for Lattany to adequately prepare his defense, considering the frequent and successive turnover among Lattany's attorneys. Later, as *Rivera* permits, the court additionally justified the continuance by reference to the unusual nature of the defense Lattany sought to present, and the numerous charges resulting from the superseding indictment. These findings, supported by the record, are not clearly erroneous.

In the December 12, 1990 order, the district court supplemented its earlier findings and orders by specifically excluding time prior to January 28, 1991 as necessary to permit effective preparation for trial and to preclude a miscarriage of justice, pursuant to 18 U.S.C.A. § 3161(h)(8)(A) and (B)(i) and (iv). The district court recognized that Lattany was incarcerated and intended to represent himself and that the court, on October 24, 1990, had precluded his defense of a

purported gambling disorder as the basis of an insanity defense.

> The purpose of the requirement that reasons be stated is to insure careful consideration of the relevant factors by the trial court and to provide a reviewable record on appeal. Both purposes are served if the text of the order, taken together with more detailed subsequent statements, adequately explains the factual basis for the continuance under the relevant criteria.

*United States v. Rush,* 738 F.2d 497, 507 (1st Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985) (citing *Brooks,* 697 F.2d at 520–22). Although the district court may not merely incorporate by reference the reasons set out in the statute, it is not necessary for it to articulate facts which are obvious and are set forth in the motion for the continuance itself. *Id.* (citing *United States v. Mitchell,* 723 F.2d 1040, 1044 (1st Cir.1983) (motion and court ruling read as complimentary documents); *United States v. Janik,* 723 F.2d 537, 545 (7th Cir.1983)). *Brooks* and *Rivera* permit a district court to fully articulate its reasons for granting a continuance even after the Speedy Trial Act time period would have expired, provided the order granting the continuance is entered before the Act's seventy-day time limit would have run. The district court's December 12, 1990 order is sufficient to justify the original open-ended continuance of November 30, 1989 if open-ended continuances are themselves permissible under the Act.

3.

The May 21, 1990 extension of the November 30, 1989 open-ended continuance, if treated separately from that original continuance, would, however, present an additional problem under our decision in *United States v. Brenna,* 878 F.2d 117 (3d Cir.1989) (per curiam). In *Brenna,* we said:

> [A]n ends of justice continuance pursuant to section 3161(h)(8)(A) cannot be entered *nunc pro tunc,* and [we] hold that in its order, the district court must, at a minimum, state that it is entering an "ends of justice" continuance or a continuance pursuant to section 3161(h)(8)(A). The order continuing the case must be entered *before* the days to be excluded.

*Id.* at 122 (emphasis in original). When the district court announced the extension, it was unaccompanied by either a preprinted form order or an "ends of justice" statement. The concern we expressed in this statement from *Brenna* is not present here, however, because the requirements of *Rivera* were met. The statement from *Brenna* is in accord with the dicta in *Rivera* condemning *post hoc* rationalization. It requires the district court, at a *minimum,* to state in its order that it is entering an "ends of justice" continuance or a continuance pursuant to section 3161(h)(8)(A). *Id.* Here, the minimal formality of utilizing a preprinted Speedy Trial Act delay form order stating that the court is entering an "ends of justice continuance" or a "continuance pursuant to § 3161(h)(8)(A)" *Brenna* requires was met when the district court first granted its open-ended continuance on November 30, 1989. Since the conditions which induced the court to do so were still present on May 21, 1990 and were fully articulated in the court's December 12, 1990 order, the *Brenna* requirement was met.[16] After granting Lattany's prior counsel leave to withdraw and appointing Smith as stand-by counsel, the district court, in keeping with its belief that it needed to allow Lattany and his new counsel enough time to adequately prepare, extended the still extant November 30, 1989 open-ended continuance and again stated that the defense should inform the

16. The formal requirements imposed by *Brenna* supplement the requirements we set out in *Rivera.* In *Rivera,* the district court did not utilize a preprinted Speedy Trial Act delay form order or state that the continuance was pursuant to the Act or necessary for the "ends of justice." Rather, the district court merely stated that it was granting a continuance to allow counsel adequate time to prepare for trial. This reason met the requirements of the Act's special provision allowing continuances to give adequate preparation time to counsel. *See* 18 U.S.C.A. § 3161(h)(8)(B)(ii), (iv).

court when Lattany was ready to go to trial.

When the district court granted the November 30, 1989 open-ended continuance, its order was entered before the seventy-day limit would have expired. In addition, the district court stated the reasons for granting the November 30, 1989 continuance contemporaneously and then expounded on those reasons in a subsequent written order. The district court in *Brenna* did not grant any continuance prior to expiration of the time allowed by the Act. It attempted to grant the continuance, or first officially recognize the continuance, after the time period would have expired in the absence of such continuance. *Brenna,* 878 F.2d at 118–19. Here, in contrast, the district court granted the open-ended continuance before the time period would have otherwise expired. It stated that it was granted pursuant to the Speedy Trial Act's ends-of-justice exclusion. The open-ended continuance was extant when the May 21, 1990 extension was granted.

In the instant case, there is no danger of the district court's retroactively using the continuances to manufacture excludable time after being asked to dismiss the indictment for violation of the Act. The district court continued Lattany's trial before the Speedy Trial Act clock would have otherwise run and it also made the requisite Speedy Trial Act statement in its December 12, 1990 order, prior to Lattany filing his December 17, 1990 motion to dismiss for lack of prosecution. *Cf. Brenna,* 878 F.2d at 121–22 (acknowledging danger of retroactive rationalization where judge waits until asked to dismiss) (quoting *United States v. Tunnessen,* 763 F.2d 74, 78 (2d Cir.1985); *Janik,* 723 F.2d at 544–45).

We hold that the district court met the requirements of *Rivera* in granting both the November 30, 1989 continuance and then extending it on May 21, 1990.

4.

Having disposed of the *Brenna* problem created by the May 21, 1990 extension of the pre-existing open-ended continuance, we have yet to address the general question of the propriety of open-ended continuances under the Speedy Trial Act. If open-ended continuances are permissible, we must also decide whether the *Rivera* maxim, allowing supporting reasons for the continuance to be placed on the record at a later date, extends to open-ended continuances. In addition, we must decide whether a reasonableness limitation dependent on the circumstances of each particular case must be placed on such continuances and if so, whether the delay in this case was reasonable.

Other courts of appeals have addressed the problem of open-ended continuances. In *United States v. Pollock,* 726 F.2d 1456 (9th Cir.1984), the United States Court of Appeals for the Ninth Circuit rejected open-ended continuances, holding that "an 'ends of justice' extension under section 3161(h) is proper only if ordered for a specific period of time and justified on the record with reference to the factors enumerated in section 3161(h)(8)(B)." [17] *Id.* at 1461; *accord United States v. Jordan,* 915 F.2d 563, 565 (9th Cir.1990) ("ends of justice" continuance must be specifically limited in time and supported by findings justified by the record).

In *Rush,* the United States Court of Appeals for the First Circuit refused to adopt *Pollock*'s reasoning. *Rush,* 738 F.2d at 508. There, the district court had granted an open-ended continuance because a trial involving several codefendants was taking place in another jurisdiction. *Id.* at 506. On appeal, the Court concluded that open-ended continuances may be necessary in some cases. It stated, however, "[i]t may well be that some sort of reasonableness limitation is appropriate to prevent continuances from delaying trials unfairly and circumventing the dismissal sanctions in

17. The *Pollock* court cited our decision in *Carrasquillo* in support of its holding. *Pollock,* 726 F.2d at 1461. *Carrasquillo,* however, did not pertain to an open-ended continuance granted by a court, or any continuance granted by a court for that matter. Rather, it addressed the deputy clerk's failure to set a trial date until after the expiration of the seventy-day Speedy Trial Act time limit because of the defendant's counsel's unavailability for trial.

the Speedy Trial Act...." *Id.* at 508. The court of appeals did not have to decide in *Rush* whether the delay was unreasonable. It was spared the need to decide whether a Speedy Trial Act violation had occurred because one of the motions to dismiss on double jeopardy grounds defendants had filed several weeks after the open-ended continuance was granted was well taken. *Id.*

In stating in dicta its objections to a *per se* rule barring open-ended continuances, the First Circuit in *Rush* made the following observation with which we agree:

> [I]t is generally preferable to limit a continuance to a definite period for the sake of clarity and certainty; but at the same time it is inevitable that in some cases, like the present one, a court is forced to order an (h)(8) continuance without knowing exactly how long the reasons supporting the continuance will remain valid.

*Id.* (footnote omitted). The *Rush* court went on to note that the Speedy Trial Plan adopted by the District of Maine recognized this concern. The Maine Plan specifically provided that an (h)(8) continuance may be granted "for either a specific period of time or a period to be determined by reference to an event ... not within the control of the government...." *Id.* at 508 n. 23; *see United States v. Burke,* 673 F.Supp. 1574, 1578 (N.D.Ga.1986) (holding open-ended continuance permissible relying heavily on local court plan which specifically referred to open-ended continuances; "while courts should always be hesitant to grant open-ended continuances, the extent and complexity of the instant case involving such a large number and breadth of pretrial motions warranted the magistrate ... to grant an open-ended continuance"), *aff'd,* 856 F.2d 1492 (11th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3222, 106 L.Ed.2d 571 (1989).

Although this Court is not bound by the language of a speedy trial plan adopted by the district court, we believe it is appropriate to consider a similar existing plan of the United States District Court for the Eastern District of Pennsylvania since a number of cases addressing the propriety of open-ended continuances have referred to similar plans. The district court's Speedy Trial Act plan provides in part:

> The court may grant a continuance under 18 U.S.C. § 3161(h)(8) for either a specific period of time or a period to be determined by reference to an event (such as recovery from illness) not within control of government. If the continuance is to date not certain, *the court shall require one or both parties to inform the court promptly when and if the circumstances that justify the continuance no longer exist.*

Plan for prompt disposition of criminal cases, pursuant to Speedy Trial Act of 1974—18 U.S.C.A. § 3165(e)(3), United States District Court for the Eastern District of Pennsylvania, at 16 (emphasis in original). The Eastern District Plan similarly provides in cases of post-indictment delay: "If the continuance [granted under 18 U.S.C. § 3161(h)(8)] is to a date not certain, the Court shall require one or both parties to inform the Court promptly when and if the circumstances that justify the continuance no longer exist." *Id.* at 17.

It is thus apparent that a need for some open-ended continuances was foreseen by the drafters of the district court's Speedy Trial Act Plan. In that circumstance, we, like the Court of Appeals for the First Circuit, are hesitant to prohibit them entirely. We think such continuances can be reconciled with the Speedy Trial Act provided they are not permitted to continue for an unreasonably long period of time. Subsection (h)(8) of the Act is designed to make the Speedy Trial Act " 'flexible enough to accommodate the practicalities of our adversary system.' " *Rush,* 738 F.2d at 508 (quoting *United States v. Mitchell,* 723 F.2d at 1044). A rule altogether barring open-ended continuances would be inappropriate as contrary to that purpose.

Thus, we hold open-ended continuances do not necessarily violate the Act and that *Rivera,* which permits the supporting reasons for a continuance granted before the seventy-day period would have expired to be placed on the record at a later date, extends to open-ended continuances.

Since open-ended continuances cannot, however, be unreasonably long, we must decide whether the delays that resulted from the district court's open-ended continuance and its subsequent extension are reasonable under the particular circumstances of this case. Inasmuch as the government has a statutory obligation to ensure that the purposes of the Speedy Trial Act are carried out, we are troubled in that respect not only by the length of the delay but also by the fact that the government waited until December 7, 1990, over one year after the open-ended continuance had been granted on November 30, 1989 and seven months after its extension, before taking action to insure a firm trial date.

The government concedes that the court's actions departed from the "orthodox" but asks us to take into consideration "the unique circumstances of this case [as] justify[ing] a finding that at all times delays were attributable to the district court's attempts to accommodate the defendant and his succession of attorneys." Brief for Appellee at 38.

Although Lattany may not have been solely responsible for his "succession of attorneys," he was at least partially accountable for the changes, particularly with respect to the withdrawal of Ms. Webb–Eubanks. The situation was further complicated by the fact that Lattany was attempting to assert an insanity defense and wanted to proceed *pro se* when his mental competence at the time of the offense was a matter of concern to his counsel. This question of competence, an issue Lattany's counsel continues to pursue on this appeal, appears to have contributed significantly to the disputes between Lattany and his lawyers over defense strategy. Lattany was willing to assert an insanity defense but resisted any attempt to question his competence either to stand trial or to conduct his defense. Thus, he consented to his counsel's filing of a notice of insanity defense based upon his compulsive gambling disorder, but in a February 8, 1992 letter to Chief Judge Sloviter, complained that Mr. Booker "has the nerve to question my sanity in relationship to representing myself pro se." Brief for Appellee at 9.[18]

Though these issues did not directly result in any long period of excludable time, we believe they do provide an appropriate background for the district court's decision to rely on Lattany's lawyers, including stand-by counsel, to assist it in determining when the case could go to trial without jeopardizing Lattany's right to participate meaningfully in the presentation of a full defense along lines he believed appropriate. Under these circumstances, we cannot hold that the district's findings supporting the delay are clearly erroneous or that they are legally insufficient. Likewise, we cannot conclude that the delay occasioned by the open-ended continuances Lattany sought through a succession of counsel was unreasonable as a matter of law. Each time counsel changed, the new attorney appointed to represent Lattany had to be granted adequate time to prepare the case.

Considering these changes of counsel together with Lattany's acquiescence in the requests for the long continuances those changes entailed, we hold the delays occasioned by the court's open-ended continuance and its extension were not unreasonable and that the district court did not abuse its discretion by placing the burden on the defendant and his attorney to notify the court when they were ready to proceed with the trial. As the court in *Rush* stated:

> [A]lthough defendants do not bear the primary responsibility for alerting the court to speedy trial deadlines, this does not mean that they may deliberately obtain an (h)(8) continuance for their own convenience in the face of speedy trial concerns articulated by the trial court and then later claim that the court abused its discretion in granting the requested continuance.

18. Lattany argues that he did not want his counsel to file a notice of insanity defense and other pretrial motions. However, at the time these motions were filed Lattany was represented by appointed counsel and was not yet proceeding *pro se*. As is apparent from the record below, defense counsel had discussed his options with Lattany and Lattany was aware of the filing of the pretrial motions and the Notice of Insanity Defense.

*Rush*, 738 F.2d at 508 (citations omitted). Defendants cannot be wholly free to abuse the system by requesting (h)(8) continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted. *See United States v. Kucik*, 909 F.2d 206, 211 (7th Cir.1990) (where defendant actively participates in obtaining continuance, he may not rely on that period to support dismissal), *cert. denied*, — U.S. —, 111 S.Ct. 791, 112 L.Ed.2d 853 (1991).

Nevertheless, we strongly urge district courts hereafter not to wait and rely on counsel to inform them when defendants are ready to go to trial, but instead to set deadlines. If it later appears that circumstances require postponement of any deadline so set, appropriate findings showing that the interests of justice require a further continuance can be made contemporaneously with any order extending the time. This procedure will avoid the kind of problems presented by this case, not only under the Act but also under defendant's Sixth Amendment right to a speedy trial.

## IV.

In conclusion, we summarize the rationale of our decision as follows. We hold that the district court's actions in granting Lattany an open-ended ends-of-justice continuance and subsequent extension were in compliance with the Speedy Trial Act and the formal requirements for such continuances set forth in *Rivera* and *Brenna*. Open-ended continuances are not prohibited by the Act. The November 30, 1989 open-ended continuance and its May 21, 1990 extension were, when granted properly pursuant to § 3161(h)(8), necessary in the interest of justice. The findings on which the district court based its exercise of discretion in granting both the original open-ended continuance and its extension were not clearly erroneous. The district court was continually attempting to accommodate Lattany throughout the pretrial stage. Lattany acquiesced in the motions for continuances. The defense strategy was complicated because of a possible insanity defense based upon an alleged compulsive gambling disorder. There were questions concerning Lattany's competency. A number of defense attorneys withdrew from representation, and disagreements between Lattany and counsel concerning defense strategy caused Lattany ultimately to move to proceed *pro se* just before the court extended the open-ended continuance it had granted to give an earlier newly appointed counsel time to prepare. Under these circumstances, the six-month delay between the original open-ended continuance and its extension, as well as the delay from May 21, 1990 to January 28, 1991, were not unreasonable as a matter of law. Accordingly, the district court did not abuse its discretion when it delayed the trial to give counsel, and later standby counsel, an opportunity to consult with Lattany for the purpose of deciding upon and preparing an appropriate defense. We therefore hold that the district court did not err in any of its decisions to exclude time from the Act's seventy-day limit and accordingly that limit had not expired when Lattany's case attached for trial.

Lattany's convictions will be affirmed.

Before: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS and WEIS,* Circuit Judges.

## SUR PETITION FOR REHEARING

Jan. 26, 1993.

The petition for rehearing filed by appellant in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

* Hon. Joseph F. Weis, Jr., Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, was limited to voting for panel rehearing.