**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____


No. 24-2766

_____


UNITED STATES OF AMERICA

v.

BRIAN BURROWS,
          Appellant

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:19-cr-00064-003)
District Judge:  Honorable Jeffrey L. Schmehl

_____


Argued:  October 27, 2025
_____


Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, BOVE and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Filed: June 16,2026)
_____

Jason Bologna, Esq. [Argued]
Buchanan Ingersoll & Rooney
50 S 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102


<u>Counsel for Appellant</u>

Robert A. Zauzmer, Esq. [Argued]
Anthony J. Carissimi, Esq.
Bea L. Witzleben, Esq.
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

      <u>Counsel for Appellee</u>

_____

OPINION[*]
_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

More than four years after being indicted, Brian Burrows filed a motion to dismiss the indictment on constitutional and statutory speedy trial grounds. The District Court denied Burrows's motion, noting in part Burrows's failure to timely assert his rights and the case's complexity. For the following reasons, we will affirm.

I.[1]

On January 29, 2019, Burrows was named in a 116-count indictment, along with seven other co-defendants, including lead defendant John Dougherty. The indictment contained two sets of offenses — the embezzlement counts and the corruption counts. Burrows, Dougherty, and five co-defendants were charged with conspiracy to embezzle labor union and employee benefit plan assets and other related offenses, whereas Dougherty and one other co-defendant were charged with various honest services fraud

_____

[*] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

[1] We write primarily for the parties, so we recite only the facts essential to our decision.

2

offenses.

On February 15, 2019, the District Court granted the Government's unopposed motion to designate the case as complex and to exclude time under the Speedy Trial Act. The District Court noted how complex legal issues and "voluminous discovery" necessitated additional time to prepare for pretrial proceedings and trial. Supplemental Appendix ("Supp. App.") 11–13. Over the next few months, Burrows and his co-defendants filed several pretrial motions. One of those motions was Burrows's motion to sever the embezzlement counts to be tried separately.

Regular courtroom operations halted in March 2020 due to the COVID-19 pandemic. Given standing orders issued in the Eastern District of Pennsylvania, the District Court continued the trial until October 26, 2020 and excluded the delay under the Speedy Trial Act. A few weeks later, Burrows moved to continue trial until March or April 2021, citing the effect of the COVID-19 pandemic on trial preparations. The District Court granted Burrows's motion, continued the trial until January 11, 2021, and excluded time under the Speedy Trial Act.

In November 2020, the District Court granted Burrows's motion to sever the embezzlement counts, thereby splitting the case into two trials. At a telephone conference a few weeks later, the District Court continued the trial until March 1, 2021. The District Court also ordered the corruption trial to proceed first because "the complications of the COVID-19 pandemic mandated trying the case involving fewer parties first." Appendix ("App.") 6. The corruption trial began on October 4, 2021, resulting in a jury conviction more than a month later.

3

The District Court scheduled the embezzlement trial to begin on September 12, 2022, and excluded the time between the corruption and embezzlement trials from the Speedy Trial Act. A few months later, the District Court granted the Government's unopposed motion to postpone the trial until October 13, 2022. In August 2022, Dougherty's attorneys moved to withdraw as counsel, which the District Court granted. The District Court then continued the trial until January 23, 2023. By December 22, 2022, Burrows's co-defendants — except for Dougherty — had pled guilty, leaving only Burrows and Dougherty as defendants in the embezzlement trial.

In January 2023, appointed counsel for Dougherty filed an unopposed motion to continue the trial for ten months. Dougherty's counsel explained the challenges in preparing for trial as scheduled, including requesting notes from Dougherty's withdrawn counsel, drafting pretrial motions, and reviewing the "massive" discovery in the case. App. 207–10. Counsel for Burrows objected to the length of the delay only, noting that he preferred a trial in May or June 2023 but was "not opposed to a delay at all." App. 210–11. The District Court granted a continuance and set the trial date for April 24, 2023.

Over the next two months, Dougherty filed two motions to dismiss the indictment and moved to continue the April 2023 trial date. The District Court rescheduled the trial to begin on May 8, 2023. Dougherty then sought new counsel in late April 2023. In response to a motion for a continuance filed by Dougherty's then-appointed counsel, the District Court entered an order that acknowledged Dougherty's Sixth Amendment right to retain counsel of his choice, scheduled a hearing with respect to possible conflicts of

4

interest, and continued the trial indefinitely.

On June 5, 2023, Burrows moved to dismiss the indictment on speedy trial grounds, asserting both Sixth Amendment and Speedy Trial Act violations. The District Court held oral argument and subsequently denied Burrows's motion to dismiss. Burrows ultimately went to trial on the embezzlement counts on November 2, 2023. After an approximately monthlong trial, the jury convicted Burrows of twenty-one counts of conspiracy, embezzlement, and related offenses. The District Court sentenced Burrows to forty-eight months of imprisonment, followed by three years of supervised release. This timely appeal followed.

II.[2]

Burrows claims that the Government violated both his Sixth Amendment right to a speedy trial and the Speedy Trial Act. When determining whether a defendant's Sixth Amendment right to a speedy trial was violated, we review the District Court's legal conclusions de novo and its factual findings for clear error. United States v. Shulick, 18 F.4th 91, 102 (3d Cir. 2021). For claims under the Speedy Trial Act, we review the District Court's interpretation of the Speedy Trial Act de novo, its factual findings for clear error, and its decision to grant a continuance for abuse of discretion. Id. at 100.

A.

Burrows first contends that the Government violated his constitutional right to a

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231 because Burrows was charged in an indictment with violations of federal criminal law. We have jurisdiction under 28 U.S.C. § 1291.

speedy trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court established a balancing test to determine whether a criminal defendant's constitutional right to a speedy trial has been violated. Id. at 530. The Court in Barker identified four factors that courts must consider: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. None of the four Barker factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533. Rather, we must consider the factors together along with other relevant circumstances. Id. The indictment must be dismissed if a defendant's constitutional right to a speedy trial has been violated. Id. at 522.

The District Court correctly concluded that Burrows's Sixth Amendment speedy trial right was not violated. The first Barker factor — length of the delay — is largely a "triggering mechanism" for inquiry into the other Barker factors. Id. at 530. This Court has held that a delay of fourteen months is sufficient to trigger review of the remaining Barker factors. See Hakeem v. Beyer, 990 F.2d 750, 760 (3d Cir. 1993). Here, the parties agree that the delay in this case is sufficient to trigger further Barker analysis. This factor therefore weighs in favor of Burrows.

The reason for the delay is the second Barker factor, and it is the "flag all litigants seek to capture." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). The government bears the burden of justifying the delay in bringing a defendant to trial. United States v. Battis, 589 F.3d 673, 680 (3d Cir. 2009). Delay caused by the defense

6

weighs against the defendant.  Id. at 679–80.  This Court has attributed delays caused by co-defendants to the defendant asserting a violation of his Sixth Amendment speedy trial right.  See United States v. Claxton, 766 F.3d 280, 295 (3d Cir. 2014).

Burrows first claims that the Government caused a twenty-two-month delay[3] by issuing a "flawed indictment" that "include[d] two separate conspiracies within the same indictment."  Burrows Br. 20.  Even if joinder of the embezzlement and corruption counts was "flawed," the record does not support Burrows's assertion that an indictment based on the embezzlement charges alone would have resulted in a 2019 trial.  The embezzlement charges reasonably required substantial litigation independent of the corruption counts, including the review of voluminous discovery and resolution of motions by many of Burrows's co-defendants.

Burrows next contends that the District Court caused a twenty-three-month delay by proceeding on the corruption trial before the embezzlement trial.  The COVID-19 pandemic ceased regular courtroom operations from March 13, 2020 through September 17, 2021.  As our sister courts of appeals have held, delay from COVID-19 should not weigh against either side.  See, e.g., United States v. Keith, 61 F.4th 839, 853 (10th Cir. 2023) (treating "COVID-19 as a truly neutral justification—not favoring either side"); United States v. Gordon, 93 F.4th 294, 307 (5th Cir. 2024) (same).  Given the lingering complications from the COVID-19 pandemic, the District Court decided that the

---

[3]  The alleged twenty-two-month delay measures the time between Burrows's indictment on January 29, 2019 and the District Court's grant of Burrows's motion to sever on November 2, 2020.

7

corruption trial should go first because it involved fewer parties. Burrows does not identify any legal authority showing that this case management decision was improper.

Burrows also asserts that any delay intentionally caused by his co-defendant, Dougherty, should be attributed to the Government. We disagree. In Claxton, this Court attributed to the defendant delay resulting from his co-defendants. See 766 F.3d at 295. Contrary to what Burrows suggests, the fact that Claxton did not involve a co-defendant intentionally delaying trial does not change this Court's statement in Battis that "delay caused by the defense weighs against the defendant." 589 F.3d at 679–80 (quoting Vermont v. Brillon, 556 U.S. 81, 90 (2009)). Because Dougherty's delays should be attributed to Burrows — not the Government — this factor weighs in the Government's favor.

The third Barker factor considers whether the defendant has asserted his right to a speedy trial. Battis, 589 F.3d at 680. The Supreme Court has noted that "[t]he more serious the deprivation, the more likely a defendant is to complain," thereby entitling a defendant's assertion of his speedy trial right to "strong evidentiary weight." Barker, 407 U.S. at 531. A failure to assert the right, however, makes it difficult for a defendant to prove a violation of his Sixth Amendment right to a speedy trial. Id. at 532. Burrows identifies three instances in which he allegedly asserted his speedy trial rights. But in none of those instances did Burrows rely upon a speedy trial argument. Rather, the record suggests that on several occasions, Burrows assented to continuances of the trial. Burrows arguably asserted his speedy trial rights for the first time on April 27, 2023, more than four years after the indictment was returned. Even then, Burrows did not

8

explicitly invoke his speedy trial rights. He instead objected to Dougherty's appointed counsel — rather than Dougherty's new counsel — filing a motion for a continuance. This factor therefore weighs in the Government's favor.

The final Barker factor is prejudice to the defendant. 407 U.S. at 532. A defendant can establish prejudice in two ways — specific prejudice or presumptive prejudice. Battis, 589 F.3d at 682. The Supreme Court has noted, however, that presumptive prejudice alone cannot support a Sixth Amendment claim and instead must be considered along with the other Barker criteria. Doggett v. United States, 505 U.S. 647, 655–56 (1992).

Here, Burrows appears to claim both kinds of prejudice. To the extent that Burrows asserts specific prejudice based on an impaired defense, he does not explain how, if at all, any memory loss impacted his defense. The delay in this case exceeds forty-five months, so prejudice can be presumed. See Battis, 589 F.3d at 683 (holding that prejudice is presumed when there is a forty-five-month delay in bringing a defendant to trial). But presumptive prejudice must be viewed in light of the other Barker factors. As discussed above, the Government was largely not at fault for the delay, and Burrows failed to assert his speedy trial right in a timely fashion. The final factor therefore weighs in favor of the Government. Accordingly, the District Court properly determined that Burrows's constitutional speedy trial right was not violated.

B.

Burrows next contends that the Government violated the Speedy Trial Act. The Speedy Trial Act, 18 U.S.C. §§ 3161–3174, establishes timing deadlines for all phases of

9

a criminal prosecution. See 18 U.S.C. §§ 3161(b), (c). As relevant here, a defendant must be tried within seventy days of his indictment or first appearance, whichever is later. Id. § 3161(c)(1). If a defendant is not tried within the seventy-day countdown, the indictment "shall be dismissed." Id. § 3162(a)(2). Yet the Speedy Trial Act provides some exceptions, which pause the speedy trial clock and exclude periods of delay. United States v. Adams, 36 F.4th 137, 144 (3d Cir. 2022). An ends-of-justice continuance under 18 U.S.C. § 3161(h)(7)(A) is one such exception.

A district court may grant a continuance when it finds that "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). To make this determination, district court judges consider, among other things:

> [w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

Id. § 3161(h)(7)(B)(ii). This Court has recognized that case complexity is an acceptable reason for tolling the speedy trial clock. United States v. Scarfo, 41 F.4th 136, 176 (3d Cir. 2022). When granting an ends-of-justice continuance, a district court must "set[] forth, in the record of the case, either orally or in writing, its reasons" for finding that the ends of justice outweigh the interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).

Burrows claims that the Speedy Trial Act has been violated because the speedy

10

trial clock began to run on January 9, 2023 without any exclusions. He first challenges whether the District Court's complex case designation tolled the speedy trial clock until trial. Burrows does not dispute the District Court's initial complexity designation in February 2019. Burrows instead contends that by December 21, 2022, the complexity designation no longer applied because guilty pleas by four co-defendants left only Dougherty and Burrows as co-defendants in the embezzlement trial. Burrows relies on opinions from our sister courts of appeals to assert that a district court must revisit its complexity determination when the size and scope of a trial changes. See United States v. Ramirez, 788 F.3d 732, 736 (7th Cir. 2015); United States v. Gambino, 59 F.3d 353, 358 (2d Cir. 1995); United States v. Pikus, 39 F.4th 39, 54 (2d Cir. 2022).

Yet our sister courts of appeals have not adopted such a requirement. See Ramirez, 788 F.3d at 735–36; Gambino, 59 F.3d at 358; Pikus, 39 F.4th at 54–55. Rather, in Pikus, the Court of Appeals for the Second Circuit determined that "to maintain a complexity designation, a district court need not 'repeat all of the details of its findings on the record each time it grants an ends-of-justice continuance.'" 39 F.4th at 54 (quoting United States v. Bikundi, 926 F.3d 761, 778 (D.C. Cir. 2019)). The Court of Appeals for the Second Circuit noted that such reiterated findings were unnecessary if a district court had explained its reasons when first designating the case as complex and the circumstances remained "essentially unchanged." Id. (quoting Bikundi, 926 F.3d at 778). We agree that district courts need not revisit complexity designations each time a continuance is granted. Had Burrows challenged the complexity designation in

11

December 2022 when his co-defendants pled guilty, perhaps the District Court might have needed to revisit its determination.[4] But that did not happen.

Here, the District Court explained its reasons for designating the case as complex, noting the numerous legal issues and extensive discovery that required additional time to prepare for trial. And the record suggests that, even after most of Burrows's co-defendants pleaded guilty, the case remained complex. Dougherty and Burrows still faced more than eighty counts based on hundreds of individual transactions, and the evidence at trial consisted of several business records, Title III wiretap recordings, and witnesses. Trial lasted for around one month, suggesting that the co-defendants' guilty pleas did not reduce drastically the amount of evidence presented. Because the District Court's complex case designation tolled the speedy trial clock throughout the pretrial period, the Government did not violate the Speedy Trial Act.[5]

## III.

For the foregoing reasons, we will affirm the District Court's order denying Burrows's motion to dismiss the indictment.

---

[4] To be clear, we do not hold that a complexity designation automatically pauses the speedy trial clock for the rest of the case. We hold simply that, because the case remained complex, the District Court did not need to revisit its complexity determination every time it issued a continuance. Had the case changed drastically such that it was no longer complex and Burrows had challenged the complexity designation, the District Court may have needed to revisit whether the speedy trial clock remained tolled.

[5] Burrows also contends that the District Court's orders on September 8, 2022, January 9, 2023, and April 28, 2023 failed to satisfy the procedural requirements necessary for ends-of-justice continuances. We need not address these arguments because the District Court's complexity designation paused the Speedy Trial Act's seventy-day countdown.

*United States v. Burrows*, No. 24-2766
BOVE, *Circuit Judge*, concurring in part and concurring in the judgment.

Defendant's trial began about 1,721 days after the Indictment in this case was filed. Stark as that fact is, I agree with my colleagues that Defendant's constitutional and statutory speedy trial rights were not violated. I respectfully disagree, however, with their analysis of the Speedy Trial Act's case-complexity factor. Therefore, I join all but Part II.B of our nonprecedential opinion.

Courts faced extraordinary and unprecedented challenges during the COVID-19 pandemic. Unprecedented circumstances do not always make useful precedents. This is one such case. The unique situation faced by the District Court did not foster durable guidance about docket management. So I am pleased that today's decision is nonprecedential. And my disagreement with some of the reasoning in the District Court's 2023 decision is not intended to suggest that the record reveals anything but attentive management of the proceedings. In my view, the District Court was quite careful in balancing competing considerations pressed by the prosecution and the eight co-defendants.

I have a different view of the prosecution's management of this case, which, make no mistake, involved serious criminal conduct worthy of a righteous prosecution and fair punishment. Overcharged at the outset with 116 counts,[1] and based on charges that were

---

[1] When taken to extremes, stacking numerous overlapping charges can be problematic even if legally permissible. To the extent prosecutors anticipate trials, an eight-defendant, triple-digit charging package challenges our assumptions about spillover prejudice and a jury's ability to consider each count individually. Overcharging also risks creating at least the appearance of coercive incentives for guilty pleas or cooperation from defendants seeking

so improperly joined that everyone has referred to them in distinct groupings established by the District Court's severance—the "corruption" charges and the "embezzlement" charges—the prosecutors took positions on speedy trial rights that were inconsistent with their obligations to Defendant, the public, and the District Court. Most troubling is the fact that, after convincing the District Court in June 2023 that the two-defendant trial at issue was still complex, the prosecution told the court in September 2023 that was no longer the case. Nothing material had changed.

The District Court relied on the prosecution's June 2023 representations when denying Defendant's speedy trial motion. The court held that an unopposed February 2019 continuance based on case complexity under the Speedy Trial Act, which had been "open ended" and did not set a trial date, was adequate to toll the Act's 70-day clock for more than four years. The prosecution's unfortunate about-face helps to illustrate the errors that transpired. The case's complexity had dissipated long before the summer of 2023. Even if the case was still complex, the February 2019 continuance lasted for an unreasonably long period under our case law. The District Court also granted several intervening continuances that did not rely on complexity at all, which means the February 2019 order was no longer operative. Thus, based largely on the text of the statute, the initial complexity continuance was not by itself an adequate basis to deny Defendant's motion.

---

to avoid massive post-trial sentencing exposure that is wholly disproportionate to the offense conduct. For example, at the outset of this case, a co-defendant faced more than 140 years in jail based on 11 counts. The prosecution offered to dismiss seven of the counts if that co-defendant pleaded guilty, the co-defendant took that offer, and the District Court sentenced that co-defendant to 15 days' incarceration after applying the statutory sentencing factors and the Parsimony Clause.

This is a concurrence because Defendant's appeal is quite confined. His statutory arguments focus on two continuances during a relatively narrow period in 2023. Neither of those continuances relied on case complexity under the Speedy Trial Act. The District Court exercised sound discretion grounded in years of service to conclude that those continuances were necessary due to choice-of-counsel issues and potential conflicts relating to co-defendant John Dougherty. I see no issue with those continuances. Accordingly, I concur in the judgment.

## I.

The Speedy Trial Act directs District Courts "to assure a speedy trial." 18 U.S.C. § 3161(a). The default rule is that trials "shall commence within seventy days" of an Indictment. *Id.* § 3161(c)(1). District Courts share the burden of these obligations with prosecutors. "[T]he government has a statutory obligation to ensure that the purposes of the Speedy Trial Act are carried out." *United States v. Lattany*, 982 F.2d 866, 882 (3d Cir. 1992).[2] In carrying out these obligations, judges and prosecutors must work to protect a statutory speedy trial right that "belongs not just to the defendant, but to the public as well." *United States v. Rivera Const. Co.*, 863 F.2d 293, 296 n.4 (3d Cir. 1988).

Of course, many trials do not start within the 70-day period set forth in the Speedy Trial Act. As relevant here, District Courts may pause the clock—excluding some pretrial time that elapses from the 70-day countdown—in service of the "ends of justice." 18

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history. Citations to "ECF" are to filings on the District Court's docket sheet.

3

U.S.C. § 3161(h)(7)(A). The Act sets forth a variety of considerations bearing on that issue, including case complexity. *Id.* § 3161(h)(7)(B)(ii). Congress directed that time may not be excluded from the speedy trial clock based on these provisions "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).

The statutory text "give[s] district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Zedner v. United States*, 547 U.S. 489, 508 (2006). The requirement of findings to support an ends-of-justice exclusion "counteract[s] substantive openendedness with procedural strictness." *Id.* at 509. Procedural strictness may not be the first thing that comes to mind when surveying our post-*Zedner* case law. "Our decisions give district courts considerable leeway" as to substance and procedure when applying the Act. *United States v. Reese*, 917 F.3d 177, 184 (3d Cir. 2019).

This is one of the Circuits that permits "open-ended" continuances, which allow a District Court to pause the 70-day clock without announcing when it will kick back in. *See Lattany*, 982 F.2d at 881. In this Circuit, a District Court also complies with the Act's mandate by entering an order citing § 3161(h)(7)(A) and explaining the factual bases for the continuance at a later date, as long as the explanation is provided before the 70-day period expires. *See, e.g., id.* at 878 (citing *United States v. Brooks*, 697 F.2d 517, 521-22 (3d Cir. 1982) and *Rivera*, 863 F.2d at 297).

"But there are still limits." *Reese*, 917 F.3d at 184. District Courts may not exclude time retroactively. *See United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989); *United*

4

*States v. Carrasquillo*, 667 F.2d 382, 386 (3d Cir. 1981). Open-ended exclusions of time may not drag on "for an unreasonably long period of time." *Lattany*, 982 F.2d at 881. And we have "strongly urge[d]" District Courts to "set deadlines," "caution[ed] . . . against the practice of entering open-ended continuances," and "strongly" recommended that District Courts make a contemporaneous record of "the reasons for granting any continuance." *Id.* at 883, 876 n.14.

## II.

The District Court relied exclusively on the February 15, 2019 continuance to deny Defendant's statutory speedy trial motion. The court reasoned that the open-ended continuance was still operative in September 2023, and that the case was still complex at that time under the Act. I disagree with both points.

Between the February 2019 continuance and the denial of Defendant's motion, the District Court entered nine additional orders excluding time in the interests of justice pursuant to § 3161(h)(7)(A). Only three of those nine orders referenced case complexity under § 3161(h)(7)(B)(ii). The last continuance that mentioned complexity was entered on January 27, 2022, almost two years before Defendant's trial. In proposing the text of that order, the prosecution sought an improper retroactive exclusion of time dating back to October 4, 2021, which was the second time the prosecutors had invited such an error. *See Brenna*, 878 F.2d at 122 ("The order continuing the case must be entered *before* the days to be excluded."); *see also Reese*, 917 F.3d at 184 ("[T]he district court cannot exclude the time in hindsight.").

The bigger problem is that the District Court's reliance on complexity in January

5

2022 did not, as the prosecution later suggested, automatically carry over into September 2023 despite intervening continuances based on other Speedy Trial Act factors. I have four specific concerns with the manner in which the District Court applied § 3161(h)(7) when denying Defendant's Speedy Trial Act motion:

1. We have never held that invoking complexity under the Speedy Trial Act shuts off the speedy trial clock, as a matter of law, for the remainder of the case. That proposition is particularly dubious where, as here, the trial judge grants subsequent continuances that were not based on complexity.

2. In contrast to the Sixth Amendment speedy trial analysis, the timing of Defendant's motion and his failure to raise an earlier objection should not have been weighed heavily against him in the analysis of the Speedy Trial Act.

3. The period between the February 2019 open-ended continuance and Defendant's June 2023 motion was unreasonably long, which means the continuance was defective under our case law by the time the District Court denied the motion in September 2023.

4. Three months after the District Court's ruling, the government abruptly changed course and argued that the case was not complex. Those contentions called into question the veracity of the prosecution's arguments in opposition to Defendant's motion and undercut the District Court's reliance on those positions.

I address each concern below. Collectively, they demonstrate that the District Court's case-complexity reasoning under the Speedy Trial Act was erroneous.

I doubt that the District Court's management of this case during the course of a global pandemic is indicative of a general practice for handling Speedy Trial Act continuances and case-complexity under § 3161(h)(7). Nevertheless, to be clear, "[w]e cannot excuse a court practice that fails to comply with the language of the Act or to further its policies even though its objective is to keep a judge free of scheduling conflicts that result from overcrowded trial dockets." *Carrasquillo*, 667 F.2d at 388.

6

## A.

The District Court was wrong to cast aspersions at the so-called "novel concept" that this case was "implicitly re-designated as non-complex" at some point. A5. Complexity designations are not permanent. A continuance based on complexity is not written in stone. Such a continuance is only valid for as long as the case continues to be complex, and intervening continuances expressly based on other considerations are strong evidence that complexity no longer justifies delaying a trial. These propositions follow from the text and structure of the statute as well as case law interpreting it.

Under the Speedy Trial Act, time "shall be excluded" from the calculation of the speedy trial clock "if the judge granted *such continuance* on the basis of his findings" balancing the relevant ends-of-justice interests. 18 U.S.C. § 3161(h)(7)(A) (emphasis added). The second sentence of § 3161(h)(7)(A) instructs that the court must make findings relating to the basis for "such continuance." *Id.* By twice referring to "such continuance" in § 3161(h)(7)(A), Congress emphasized that the findings should be specific to a particular exclusion of time from the 70-day countdown. The statute sets forth a non-exhaustive list of factors that District Courts "shall consider" when thinking about the particular continuance at issue, including case complexity. *Id.* § 3161(h)(7)(B)(ii).

Based on this text, an earlier complexity finding does not carry through to a later exclusion of time unless the court makes a complexity finding in support of the subsequent "such continuance." *Id.* § 3161(h)(7)(A). In other words, if hypothetical Continuance A is based on complexity, *see id.* § 3161(h)(7)(B)(ii), and hypothetical Continuance B is based solely and expressly on the need to review recently produced discovery, *see id.*

7

§ 3161(h)(7)(B)(iv), then it is error for a trial judge to later revisit "such continuance" by asserting that Continuance B was also based on complexity for purposes of § 3161(h)(7).

The cases cited by the District Court do not undercut this interpretation of the Speedy Trial Act. *United States v. Scarfo* involved a single open-ended exclusion of time without intervening continuances. 41 F.4th 136, 176-77 (3d Cir. 2022). The District Court also cited *United States v. Bikundi*, but the trial judge in that case cited case complexity in each of five continuances over the course of 18 months. 926 F.3d 761, 777-78 (D.C. Cir. 2019). The D.C. Circuit held that the trial judge was not required to "repeat all of the details" supporting the express complexity findings in those continuances. *Id.* at 778. Here, in contrast, the continuances after January 2022 did not mention complexity at all.

My interpretation of the Speedy Trial Act is also supported by *United States v. Pikus*, 39 F.4th 39 (2d Cir. 2022), which the District Court cited as part of an unpersuasive effort to justify exclusive reliance on the February 2019 open-ended continuance. In *Pikus*, the panel vacated a conviction based on an "extraordinary" 3.5-year delay that was shorter than the one Defendant faced. *Id.* at 58. An experienced district judge sitting by designation in the Second Circuit rejected a series of continuances that "perfunctorily excluded time without explanation" and "referred back to the original designation of this case as complex." *Id.* at 53-54. The main issue in *Pikus* was that the trial judge never provided any details at all to support a complexity finding under the Speedy Trial Act. *See id.* at 54. That was not the problem here. The District Court's February 2019 continuance had an adequate basis at the time. The order did not remain in effect, however, after the court entered other continuances based on distinct considerations, and the complexity of

8

the case worked itself out through motion practice, guilty pleas, and a trial on the severed counts not involving Defendant.

The *Pikus* panel reminded prosecutors and courts that "the length of an exclusion for complexity must be not only *limited in time*, but also reasonably related to the *actual needs of the case*." 39 F.4th at 54 (emphasis added). The trial judge must explain "why the case's purported complexity justified *that particular adjournment or the overall delay* in this case." *Id.* at 54 (emphasis added). *Pikus* and the cases cited in that opinion are therefore consistent with my view that it is not "novel," as the District Court put it, for a case to lose its complexity over time such that an open-ended Speedy Trial Act continuance on that basis ceases to toll the clock. With respect to ends-of-justice continuances under § 3161(h)(7)(A), the statute requires that each "such continuance" must be justified by the factors cited when the trial judge explains the basis for the continuance in question.

**B.**

The District Court also suggested that Defendant had waived his Speedy Trial Act argument by consenting to the February 2019 complex-case designation. In support, the court relied on one of our nonprecedential opinions, which cited *New York v. Hill*, 528 U.S. 110 (2000). *Hill* interpreted the Interstate Agreement on Detainers, 18 U.S.C. app. § 2. *See* 528 U.S. at 111. Writing for the Court, Justice Scalia found an "analogy to the federal Speedy Trial Act" to be "inapt." *Id.* at 117 n.2. Justice Alito elaborated on why in *Zedner*. Because the statutory right to a speedy trial belongs to the public as well as a defendant, that defendant cannot opt out of the Act "to the detriment of the public interest." 547 U.S. at 502.

9

Any argument based on Defendant's alleged "acquiescence" in a continuance under the Speedy Trial Act "runs headlong into *Zedner*." *Reese*, 917 F.3d at 183. "[A] defendant's mere consent or failure to object to a continuance is insufficient to exclude time under the Act." *Id.* at 183 n.7; *see also Scarfo*, 41 F.4th at 176 n.31; *Carrasquillo*, 667 F.2d at 390 ("We do not find excludable time under a 'waiver' theory."). The only requirement is that a defendant must seek dismissal "prior to trial." 18 U.S.C. § 3162(a)(2). Thus, while I agree with my colleagues that the timing of Defendant's motion was relevant to the constitutional analysis—at least in part because the Sixth Amendment right is Defendant's alone—the timing of Defendant's assertion of his statutory right had no bearing on the application of the Speedy Trial Act's text.

## C.

Even if we ignore the intervening Speedy Trial Act continuances that did not cite case complexity, the February 2019 open-ended continuance was still not operative in September 2023 because it had become "unreasonably long" by the time of the District Court's decision. *Lattany*, 982 F.2d at 881.

Any assessment of what is reasonable for purposes of protecting the rights of defendants and the public through an open-ended continuance must begin with the fact that the Speedy Trial Act's default rule is 70 days. Open-ended continuances are not even allowed in two Circuits, which should further inform what is unreasonably long in this Circuit. *See United States v. Gambino*, 59 F.3d 353, 358 (2d Cir. 1995); *United States v. Pollock*, 726 F.2d 1456, 1461 (9th Cir. 1984). There are also concrete benefits to keeping that window tight when imposing open-ended continuances. By establishing defined

10

periods for warranted trial delays, courts promote transparency and access by setting future scheduling dates that observers can track and plan for. Fixed-period continuances also reduce the risk that the stewards of these speedy trial rights will lose count of the clock amidst their heavy caseloads and other demands on their time. *See United States v. Tinklenberg*, 563 U.S. 647, 658 (2011) (explaining that "theoretical strategies" to address "administrative difficulties" presented by the Act "would not prevent all or even most mistakes, needless dismissals of indictments, and potential retrials after appeal—all of which exact a toll in terms of the fairness of and confidence in the criminal justice system").

We have "strongly" cautioned District Courts not to use open-ended continuances unless necessary. *See Lattany*, 982 F.2d at 883, 876 n.14. Our Court imposed the prohibition on "unreasonably long" open-ended continuances in the same case. *See id.* at 881. I presume that is because the *Lattany* panel had at least some of the concerns I have outlined. Extrapolating from those datapoints and related case law, things get pretty dicey in my view when we start talking about open-ended continuances in terms of years rather than months.

The outer boundary in this Circuit appears to be the approximately 25 months between the open-ended continuance and trial in *Scarfo*. *See* 41 F.4th at 163-64, 176-78. So there is precedent for about two years of open-ended delay. Other cases involved shorter continuances. *See United States v. Adams*, 36 F.4th 137, 147 n.9 (3d Cir. 2022) (six months); *Lattany*, 982 F.2d at 874-76 (14 months); *see also United States v. Harris-Franklin*, 146 F.4th 631, 644 (8th Cir. 2025) (40 days). I am not aware of any case in this Circuit that supports the period of almost 52 months—about 4.25 years—that elapsed

11

between the District Court's first open-ended continuance and Defendant's speedy trial motion.

The District Court's framing of the Speedy Trial Act issue, which relied on the first continuance as a basis for covering the entire period of delay, does not work. If that period is treated as a block of time, and without regard to the intervening continuances not mentioning complexity, then the continuance was unreasonably long and therefore defective when the District Court denied Defendant's speedy trial motion in September 2023.

**D.**

The prosecution made inaccurate representations to the District Court about the remaining complexity in the case at the time of Defendant's speedy trial motion, which resulted in an unsupported case-complexity finding.

When Defendant filed the speedy trial motion in June 2023, he had one co-defendant, Dougherty, and they faced charges that had been pending since January 2019 based on evidence that had been produced to them in an undisputedly timely manner. In response to Defendant's motion, the prosecution argued that the case was "still complex." ECF 507 at 5 n.2. The prosecution referred to the "extremely large amount of discovery" and the "large volume of evidence" at the anticipated trial. ECF 507 at 5 n.2.

There are strong arguments that neither of the considerations cited by the prosecution was relevant to complexity under the Speedy Trial Act. Covered case complexity under the Act must arise from "the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law." 18 U.S.C.

12

§ 3161(h)(7)(B)(ii). The volume of discovery is relevant to a separate statutory factor, which addresses "the reasonable time necessary for effective preparation" and would arguably be superfluous if § 3161(h)(7)(B)(ii) also covered discovery. *Id.* § 3161(h)(7)(B)(iv); *see also Pikus*, 39 F.4th at 53 ("[W]e doubt that a case can be designated as 'complex' solely because it involves a lot of documents."). Moreover, the expected nature of a prosecutor's trial proof against a particular defendant should rarely justify a significant continuance, much less a 4.25-year delay, because the anticipated complexity of that evidence is typically a static consideration regardless of when the trial starts. *See Gambino*, 59 F.3d at 358 ("Were [defendant's] trial postponed to the next millennium the proof would still be complex."). Thus, the prosecution's arguments regarding complexity were legally suspect, even if not unquestionably wrong, when presented to the District Court in their June 2023 opposition to Defendant's motion.

Apart from any legal infirmities, context reveals that those representations were simply inaccurate. Six months earlier, at the January 2023 conference involving the same two defendants, the prosecution did not challenge the following argument from Defendant's counsel: "I don't think the case is all that complicated, frankly." A211. Nor did the District Court. In fact, the District Court stated in January 2023 that the case could be tried "fairly and competently" before September 2023, and the court set an April 2023 trial date. A218. The prosecution contended at that January 2023 conference that the 10-month adjournment sought by Dougherty was "not in the public interest." A212. There is significant tension between these assertions prior to Defendant's speedy trial motion and

13

the prosecution's opposition to that motion—where they argued that an even longer delay, of 11 months, was consistent with the rights of Defendant and the public.

The lack of case complexity at the time of Defendant's motion is further illustrated by the fact that the prosecution did a total about-face just weeks after the District Court's ruling on September 8, 2023. In a September 25, 2023 filing opposing another adjournment motion from Dougherty, the prosecution argued that the pending charges, "although dense, *are not especially complex.*" ECF 537 at 3 (emphasis added). Three months earlier, the prosecutor had emphasized the complexity of the trial proof. After successfully opposing Defendant's speedy trial motion, the same prosecutor pointed out that the transactions at issue could be "easily grouped into . . . just a few categories." ECF 537 at 3. Whereas the prosecutor had previously emphasized the volume of discovery, in September 2023 he felt it was time to let everyone know that "a significant portion of the discovery is not related" to the charges Defendant and Dougherty faced. ECF 537 at 3. As in January 2023, but not in opposition to Defendant's speedy trial motion, the prosecution argued that "[a]dditional delay is not in the public interest." ECF 537 at 9. And with significant irony, the prosecution also wielded Defendant's speedy trial rights as a sword against Dougherty, arguing that Defendant's "rights and professed desire for trial must be considered here." ECF 537 at 9.

On appeal, the prosecution would have done well to acknowledge the manner in which they whipsawed Defendant to achieve their desired results when opposing his speedy trial motion and Dougherty's adjournment motion. And the District Court did not have the benefit of transparency from the prosecution when the court ruled on Defendant's

14

motion. It is still true that the prosecution's position on complexity lacked support in the record at the time of that ruling. This is the final reason, of four, that I do not believe Defendant's conviction can be affirmed based on the District Court's case-complexity reasoning under the Speedy Trial Act.

**III.**

While I respectfully disagree with my colleagues regarding case complexity, I am confident that Defendant's statutory speedy trial arguments are meritless.

Defendant does not contest the exclusion of time under the Speedy Trial Act between the unopposed open-ended continuance on February 15, 2019 and January 9, 2023. His statutory argument focuses on two continuances entered by the District Court in 2023. On January 9, 2023, the District Court partially granted Dougherty's motion for a continuance and excluded speedy trial time until a then-scheduled April 24, 2023 trial date. The court incorporated arguments from Dougherty's new counsel and found that the continuance was appropriate to avoid a "miscarriage of justice" under § 3161(h)(7)(B)(i). I see no error in the District Court's reliance on that provision and the related ends-of-justice balancing based on the issues the parties presented in court filings and at the January 9, 2023 conference.

The second order Defendant has placed at issue, entered on April 28, 2023, was also well-founded. The detailed order described the history of Dougherty's attorney choices dating back to November 2022, noted the prosecution's concerns about potential conflicts faced by Dougherty's new counsel, and cited case law relating to Dougherty's Sixth Amendment right to counsel of his choice. The order also cited § 3161(h)(7)(A) and

15

included an ends-of-justice finding. Given the constitutional considerations in play, and notwithstanding Defendant's opposition at the time, there was no abuse of discretion in the decision to exclude time based on concerns about a "miscarriage of justice" under the same provision the District Court cited in the January 9, 2023 order.

The April 28, 2023 continuance was open-ended, but Defendant filed his motion to dismiss the Indictment less than 6 weeks later, on June 5, 2023. The filing marked the relevant end point for speedy trial delay that the District Court was required to consider, and the brief additional continuance predating Defendant's motion was not unreasonable. *See United States v. Nevarez*, 55 F.4th 1261, 1264-65 (10th Cir. 2022).

In short, although this case was not as complicated in 2023 as the District Court was led to believe, the Speedy Trial Act was not violated. Accordingly, I concur in the judgment, including my colleagues' affirmance under the Act, and respectfully join all but Part II.B of our nonprecedential opinion.

16